**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Lawrence J. Rosenfeld, SBN 004426
rosenfeldl@gtlaw.com
John A. Doran, SBN 012112
doranj@gtlaw.com
Rebecca L. Covell, SBN 021033
covellr@gtlaw.com
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>Plaintiff,<br>v.<br>The Cheesecake Factory, Inc., a Delaware corporation,<br><br>Defendant. | NO. CV 08-1207-PHX-NVW<br><br>**OPPOSITION TO MOTION TO INTERVENE AND CROSS-MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION** |

Defendant The Cheesecake Factory, Incorporated ("Cheesecake Factory"), hereby opposes Bryce Fitzpatrick's ("Fitzpatrick") and Albert Miller's ("Miller") Motion to Intervene as plaintiffs in this action and moves this Court for an Order denying their Motion, staying their proposed cross-claims against Cheesecake Factory, and compelling arbitration of those claims, as required by their respective Arbitration Agreements dated October 31, 2004. Defendant supports this Opposition and Motion with the following Memorandum of Points and Authorities, the exhibits attached hereto, and all matters of record, which are incorporated herein by this reference.

PHX 328587512 v2

DATED this 23rd day of January, 2009.

                    GREENBERG TRAURIG, LLP

By: *s/John A. Doran*
       Lawrence J. Rosenfeld
       John A. Doran
       Rebecca L. Covell
       *Attorneys for Defendant*

PHX 328587512 v2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION.

The well-known intent behind the inclusion of alternative dispute resolution provisions in contracts is to provide the parties with an expeditious resolution to their disputes. *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc) (noting that arbitration provides a forum for resolving disputes more "flexibly and expeditiously" than they would be through litigation). To allow Fitzpatrick and Miller to intervene in this action would thwart the worthy purpose of alternative dispute resolution provisions that they are legally and contractually bound to follow. The entry of an order compelling Fitzpatrick and Miller to resolve this matter in an arbitration proceeding is appropriate because their claims arise out of their former employment relationships with Cheesecake Factory, and thus are governed by arbitration agreements that each of them signed prior to commencing their employment.

## II.  BACKGROUND.

Fitzpatrick and Miller each began working as servers for Cheesecake Factory on October 31, 2004. Before beginning their employment, each of them signed identical agreements to arbitrate any claims they might later have against Cheesecake Factory. *See* Fitzpatrick's and Miller's Handbook Receipt & Confidentiality Agreements, dated October 31, 2004 ("Arbitration Agreements"), attached hereto as Exhibits A and B, respectively. As demonstrated by the following language, Fitzpatrick's and Miller's offers of employment were each expressly conditioned on their agreement to submit to arbitration:

> I recognize that differences may arise between me and the Company during, or following my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I or the Company determines that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the

> Area Director, the CARELINE and/or the Company's staff relations department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings.

Exhibits A and B. In addition to signing and dating their respective Agreements, Fitzpatrick and Miller each initialed the above-quoted paragraph in his own Agreement, further signifying their acknowledgment of, and agreement to, the arbitration of any potential claims against Cheesecake Factory. Despite the clear and broad scope of this language, Fitzpatrick and Miller nevertheless seek to intervene as plaintiffs in this action. Because their employment-related claims are covered by their respective Arbitration Agreements, they are bound to honor their commitments to pursue their cross-claims in an arbitral rather than a judicial forum.

### III.     THE COURT SHOULD COMPEL ARBITRATION.

**A.     Fitzpatrick and Miller Are Prohibited From Intervening in this Action and Are Bound by the Federal Arbitration Act To Arbitrate Their Disputes With Cheesecake Factory.**

The Federal Arbitration Act ("FAA") governs all written arbitration agreements involving interstate commerce. 9 U.S.C. § 2;[1] *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Arbitration provisions in employment agreements fall under the FAA because employment in "interstate commerce" has been broadly defined to include "working in commerce, [ ] producing goods for commerce, or [ ] engaging in activity that affected commerce." *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 201 (1956); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995) (holding that the broad term "involving commerce" is synonymous with the term "affecting commerce" to allow Congress to exercise its commerce power to the fullest).

---

[1] The Federal Arbitration Act, 9 U.S.C. § 2, provides that "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."

-4-

To defeat a motion to compel arbitration brought under the FAA, the objecting party must show that Congress intended to make an exception for the specific type of claim at issue. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Congress has never expressed an intent to exempt Title VII claims, like Fitzpatrick's and Miller's, from the FAA. To the contrary, it is well established that the FAA may compel arbitration of Title VII and many other employment-related claims. *See, e.g., Mago v. Shearson Lehman Hutton Inc.*, 956 F.2d 932 (9th Cir. 1992); *Hurst v. Prudential Securities Inc.*, 21 F.3d 1113 (9th Cir. 1994); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437 (9th Cir. 1994) (discrimination claim subject to arbitration despite change in Title VII affording a right to trial by jury); *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003). *See also* Bruce Meyerson, *In My Opinion... Federal Preemption Limits Arizona Ruling on State Arbitration Law*, 60 Dispute Resolution Journal 58 (2005) ("U.S. Supreme Court decisions have made the FAA applicable to virtually every employment relationship.")

This is true even though some commentators have misinterpreted the Arizona Supreme Court's holding in *North Valley Emergency Specialists, LLC v. Santana*, 208 Ariz. 301, 93 P.3d 501 (2004) to suggest that arbitration provisions in employment contracts are unenforceable in Arizona. *See, e.g.,* Case Note: NORTH VALLEY EMERGENCY SPECIALISTS, L.L.C. V. SANTANA: THE DEATH KNELL FOR EMPLOYEE ARBITRATION AGREEMENTS IN ARIZONA? 47 Ariz. L. Rev. 851, 851 (Fall 2005).

In *North Valley,* the court held only that employment contracts are excluded from the procedural framework established by the Arizona Arbitration Act. 208 Ariz. at 306, 93 P.3d at 506. The court held specifically that it was not deciding the applicability of the FAA, nor the enforceability of arbitration agreements under general common law contract principles. *Id.* Although no Arizona court since *North Valley* has addressed these issues, respected commentators like Bruce Meyerson have weighed in, arguing "as a practical

-5-

PHX 328587512 v2

matter, [*North Valley*] should not affect the enforceability of the vast majority of arbitration provisions in employment agreements" in Arizona due to preemption by the FAA. *In My Opinion, supra,* at p. 60. Professor David Kader agrees:

> [T]he impact of the North Valley decision actually will be quite minimal. The Arizona Supreme Court's holding was quite limited--it simply found that the AUAA is inapplicable to employment contracts. That does not imply that other legal justifications for enforcing arbitration clauses do not exist. One such vehicle to compel arbitration is the Federal Arbitration Act ("FAA").

THE SUPREME COURT OF ARIZONA: ITS 2003-2004 DECISIONS, 37 Ariz. St. L.J. 17, 59 - 60 (Spring 2005).

Prior Arizona Supreme Court decisions make clear: "The FAA preempts state law and governs all written arbitration agreements involving interstate commerce, making such agreements enforceable in both federal and state courts." *Southern California Edison Co. v. Peabody Western Coal Co.*, 194 Ariz. 47, 51, 977 P.2d 769, 773 (1999). The court's decision in *North Valley* clearly did not preempt or overrule the long-standing policy that the Arizona Supreme Court confirmed in *Southern California Edison*.

This is also true for "aggrieved parties" who have an unconditional right to intervene in the EEOC's enforcement action. *See EEOC v. Woodmen of the World Life Ins. Soc.*, 479 F.3d 561 (8th Cir. 2007). In *Woodmen*, the district court had denied the employer's motion to compel arbitration and stay the charging party's cross-claims and allowed the charging party to intervene in the EEOC's Title VII enforcement action, despite the existence of an enforceable arbitration agreement. *Id.* at 563.

On appeal, the charging party relied on the Supreme Court's statement in *EEOC v. Waffle House*, 534 U.S. 279, 291 (2002), that "[i]f . . . the EEOC files suit on its own, the employee has no independent cause of action, although the employee may intervene in the EEOC's suit." From this snippet, the charging party argued that she had an unconditional right to intervene because the EEOC had preempted her individual claims by bringing the

-6-

enforcement action and intervention was her only means of redressing her substantive statutory rights under Title VII. *Woodmen*, 479 F.3d at 567-68. The Eighth Circuit rejected that argument and explained that the *Waffle House* court's statement should not be read as an abrogation of an employee's substantive statutory rights, but merely an acknowledgment of the EEOC's independent duty to enforce Title VII. Indeed, the fact that an employee was entitled to intervene in the enforcement action for the purpose of preserving her substantive rights demonstrated that her rights continued to exist after the EEOC had filed its suit. *Woodmen*, 479 F.3d at 568.

The Court then explained that, although "[a]n employee indisputably has a right to intervene in an EEOC enforcement action, . . . ***the key distinction*** is that intervening in the EEOC's enforcement action is a ***procedural, not a substantive, right.***" Id. at 570 (citing *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005) ("Intervention as of right is merely a procedural means for entering an existing federal action.") (emphasis added). Therefore, the substantive rights continue to exist, whether brought in an arbitral or judicial forum, and "arbitration agreements are merely forum selection clauses." *Woodmen*, 479 F.3d at 570.

After determining that her agreement was enforceable and noting that neither Title VII nor *Waffle House* precluded her from arbitrating all of the cross-claims she had asserted as an intervenor in the federal action, the court held that the charging party was bound under the FAA to arbitrate her cross-claims against her employer and was not permitted to intervene in the EEOC enforcement action. The court reversed the district court's ruling, remanded the case to the district court for entry of an order compelling arbitration of the cross-claims, and directed the district court to stay the charging party's cross-claims filed in the EEOC action, while allowing the EEOC action to proceed. *Id.* Accordingly, assuming Fitzpatrick's and Miller's Arbitration Agreements encompass the cross-claims they seek to bring against Cheesecake Factory, they will be compelled under

the FAA to pursue their claims through arbitration and may not intervene as plaintiffs in this action.

### B. Fitzpatrick's and Miller's Claims Are Covered By the Arbitration Agreements.

The standard for arbitrability is "not high" and the Court must order arbitration under 9 U.S.C. § 4 once it determines that a written arbitration agreement exists that encompasses matters at issue in the litigation. *See Simula v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) (affirming district court's order compelling arbitration and dismissing complaint). A plaintiff's allegations "need only 'touch matters' covered by the contract containing the arbitration clause." *Id.* at 721. In other words, the claims must be within the scope of the arbitration agreement. With that showing, the party seeking to avoid arbitration then carries the burden of establishing that the FAA does not apply to his claims. *Owner-Operator Independent Drivers Assoc., Inc. v. Swift Transp. Co., Inc.*, 288 F.Supp.2d 1033, 1035 (D. Ariz. 2003).

In making this determination, this Court may only consider issues relating to: (1) the making and performance of the agreement to arbitrate; and (2) whether the specific arbitration clause encompasses the dispute at issue. *See United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564 (1960). As to the first element, it cannot be disputed that Fitzpatrick and Miller each executed an Arbitration Agreement and that the arbitration clause is valid and enforceable. Each signed this Agreement as a condition of his employment with the company and each entered his initials next to the provision compelling arbitration of any subsequent disputes. Moreover, the agreements are not one-sided or unfair, and are nothing if not entirely clear and comprehensible.

The second part of the inquiry is whether or not the arbitration clause encompasses the dispute at issue. Case law mandates that the Court broadly and liberally construe the arbitration provision in favor of requiring arbitration. *See Simula*, 175 F.3d at 721; *United*

*Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 559 (9th Cir. 2008) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (quoting *United Steelworkers of Am. v. Warrior and Gulf Navigation Co.* 363 U.S. 574, 582-83). Here, Fitzpatrick's and Miller's five cross-claims fall squarely within the bounds of their Arbitration Agreements.

They each assert identical claims for relief against Cheesecake Factory for "Hostile Work Environment Sexual Harassment," "Assault," "Battery," "Intentional Infliction of Emotional Distress", and "Punitive Damages." *See* Complaint-in-Intervention, Counts One through Five. The first claim alleges that Cheesecake Factory "had actual knowledge of the sexual harassment and hostile work environment, but failed to take prompt, corrective actions to prevent it from occurring." *See id.*, ¶ 24. The second claim alleges that "Plaintiffs were the victims of repeated assaults perpetrated by co-workers." *See id.*, ¶ 31. The third claim alleges that "Plaintiffs were the victims of repeated batteries perpetrated by co-workers," *See id.*, ¶ 37, and the fourth and fifth claims are based on the alleged actions described in the prior Counts. *See id.*, ¶¶ 43-48.

The Arbitration Agreements govern "differences [that] may arise between [Fitzpatrick/Miller] and the Company during, or following [Fitzpatrick's/Miller's] employment with the Company." *See* Exhibits A and B. This language must be afforded its broadest possible interpretation. *See Simula*, 175 F.3d at 721. There can be no debate that all of their cross-claims against Cheesecake Factory are encompassed by the language of the Arbitration Agreements, insofar as they anticipate all of the theories and legal claims asserted in the Complaint-in-Intervention, including contract claims, tort claims, and statutory claims. Consequently, Fitzpatrick's and Miller's cross-claims against Cheesecake Factory must be arbitrated. *See Woodmen*, 479 F.3d at 565 ("In addressing a

PHX 328587512 v2

motion to compel arbitration then, courts generally 'ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement.'") (quoting *Faber v. Menard, Inc.* 367 F.3d 1048, 1052 (8th Cir. 2004)). Any other result would thwart the purposes of the FAA and the parties' intent in their Agreements.

### C. Even if the Federal Arbitration Act Did Not Apply, Fitzpatrick and Miller Are Still Bound By Contract to Arbitrate Their Claims.

Each signed a contract, in the form of the Arbitration Agreement, to arbitrate the cross-claims each seeks to bring in this enforcement action. In consideration for each of their consents to that agreement, Cheesecake Factory employed each of them for a certain period of time. Each Agreement was an arms-length transaction that imposed equivalent burdens on both parties. All of the elements of a valid contract are present, and the Agreements should be enforced. This is true whether or not the FAA applies. *Cole v. Burns Intern. Sec. Services*, 105 F.3d 1465, 1472 (D.C. Cir. 1997) (noting that whether or not the FAA applied, the employee was still bound to arbitrate his claims under common law contract principles).

### D. The Court Should Stay Fitzpatrick's and Miller's Cross-Claims While The EEOC Action Proceeds.

Under 9 U.S.C. § 3 the following guidance appears:

> **Stay of proceedings where issue therein referable to arbitration.** If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Pursuant to this section, this Court must stay proceedings, pending arbitration, when the Court determines that the issues involved are referable to arbitration under a written arbitration agreement. *See, e.g., Pearce v. E.F. Hutton Group*, 828 F. 2d 826, 830

(D.C. Cir. 1987) (stating that once the court is satisfied that the issue before it is referable to arbitration under an applicable written agreement, that court must stay the proceeding pending the arbitration); *see also Ross v. Mathis*, 624 F. Supp. 110, 113 (N.D. Ga. 1985). As succinctly stated in *Pearce, supra*, "if arbitration is indicated by the contract, then a stay is required by the statute."

Thus, the essential inquiry this Court must make is whether the parties have contracted to arbitrate the claims at issue. *Pearce*, 828 F.2d at 830; *see also Katz v. Shearson Hayden Stone, Inc.*, 438 F. Supp. 637, 641 (S.D.N.Y. 1977) (granting motion to stay and holding that the scope of inquiry on a 9 U.S.C. § 3 motion to stay is limited to the validity of the agreement to arbitrate) (citing *Prima Paint v. Flood & Conklin*, 388 U.S. 395 (1967)). The FAA establishes as a matter of law that any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration. *Simula*, 175 F.3d at 721. As described above, Fitzpatrick's and Miller's cross-claims arise out of or relate to their employment with Cheesecake Factory and constitute the "differences" contemplated by their Arbitration Agreements. As such, their Agreements encompass all of their claims, which mandates a stay of their proposed cross-claims pending arbitration.

## IV. CONCLUSION.

Based on the foregoing, Defendant The Cheesecake Factory, Incorporated respectfully requests that the Court enter an Order denying Bryce Fitzpatrick's and Albert Miller's Motion to Intervene, staying their proposed cross-claims against Cheesecake Factory, and compelling them to pursue those claims through arbitration.

DATED this 23rd day of January, 2009.

GREENBERG TRAURIG, LLP

By: *s/John A. Doran*
   Lawrence J. Rosenfeld
   John A. Doran
   Rebecca L. Covell
   *Attorneys for Defendant*

-11-

PHX 328587512 v2

## CERTIFICATE OF SERVICE

☒ I hereby certify that on January 23, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing and Order to the following CM/ECF registrants:

>Mary Jo O'Neill, Esq.
>Sally Shanley, Esq.
>Katherine J. Kruse, Esq.
>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
>3300 North Central Avenue, Suite 690
>Phoenix, Arizona 85012-2504
>Mary.Oneill@eeoc.gov
>Sally.Shanley@eeoc.gov
>Katherine.Kruse@eeoc.gov
>*Attorneys for Plaintiffs*
>
>Jonathan A. Dessaules, Esq.
>DESSAULES HARPER
>1 N. Central Ave., Ste. 1130
>Phoenix, AZ 85004
>jdessaules@dessaulesharper.com
>*Attorneys for Intervenors Fitzpatrick and Miller*

>*s/ Susan R. Whittaker*

PHX 328587512 v2