Jonathan A. Dessaules, State Bar No. 019439
**DESSAULES LAW GROUP**
2700 North Central Avenue, Suite 1250
Phoenix, Arizona 85004
602.274.5400 tel
602.274.5401 fax
jdessaules@dessauleslaw.com

*Attorneys for Intervenors Bryce Fitzpatrick and Albert Miller*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>Plaintiff,<br><br>vs.<br><br>The Cheesecake Factory, Inc., a Delaware corporation,<br><br>Defendant. | Case No. CIV 08-01207-NVW-PHX<br><br>**INTERVENOR'S RESPONSE TO CROSS-MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION** |

### INTRODUCTION

Intervenors Bryce Fitzpatrick and Albert Miller hereby respond to Cheesecake's Opposition to Motion to Intervene and Cross-Motion to Stay Proceedings and Compel Arbitration ("Motion to Compel Arbitration"). Cheesecake does not deny that Fitzpatrick and Miller have the right to intervene, but rather moves to compel arbitration on the basis of the following sentence in an untitled paragraph in a document torn from a 66-page employee handbook: "I agree to participate in arbitration proceedings." Cheesecake's Motion to Compel Arbitration is without merit and should be denied for two reasons.

First, the seven words that Cheesecake contends amounts to an "Arbitration Agreement" do not constitute a valid and enforceable contract under Arizona law. The "Agreement" in this case is procedurally unconscionable and lacks mutuality. Cheesecake has not cited to a single case in which a court upheld such one-sided and sparsely-worded arbitration language. An employer's premeditated insertion of the word, "arbitration," into an obscure and nondescript

location does not create a binding contract between the parties, especially where the drafter is not bound by its terms and openly disavows the existence of any contract in the same document.

Second, the so-called "Arbitration Agreement" does not encompass the Title VII and derivative claims in this case. Although Cheesecake summarily dismisses sexual assault and harassment as a mere "difference" with the Company, Title VII requires an express and knowing waiver of the employee's rights to a jury trial, a judicial forum and judge, and an appeal. There is nothing in the untitled paragraph that suggests an express and knowing waiver existed in this case.

Cheesecake cannot meet its burden in this case of demonstrating the existence of a valid and enforceable arbitration agreement that would force Fitzpatrick and Miller to arbitrate their claims. Simply put, there is no enforceable arbitration agreement covering the claims at bar.

**FACTUAL BACKGROUND**

In October 2004, Cheesecake required new employees Fitzpatrick and Miller to sign a document entitled "Handbook Receipt & Confidentiality Agreement" ("Handbook Receipt"), which contained the brief untitled passage Cheesecake now claims is an arbitration agreement. [Exhibits A and B to Motion to Compel Arbitration] The document was torn from a 66-page employee handbook, which contained nothing regarding arbitration. [Exhibit C to this Response]

At the time of signing, Fitzpatrick and Miller did not know, nor did Cheesecake explain to them, what the phrase "arbitration proceeding" meant. [Exhibits A and B to this Response] They were not aware, nor did Cheesecake explain to them, that they were purportedly waiving their rights to a jury trial, a judicial forum and judge, and an appeal in the event of a lawsuit. *Id.* Nor did the Handbook itself did not explain any of these significant facts. They also did not know or understand they were entering into any agreement or contract with Cheesecake. *Id.* In fact, the Handbook Receipt containing the claimed arbitration agreement expressly stated that

they were *not* entering into any agreement or contract of employment because their employment at all times would be at-will. [Exhibits A and B to Motion to Compel Arbitration]

During their employment, Fitzpatrick and Miller were repeatedly physically and sexually assaulted and harassed by numerous coworkers. The pervasive harassment and assaults were reported to and witnessed by Cheesecake's managers who refused to act, thereby perpetuating a hostile workplace environment of sexual harassment so severe and pervasive that it materially altered the conditions and privileges of employment, ultimately resulting in Fitzpatrick and Miller's constructive discharge.

Fitzpatrick (in November 2006) and Miller (in February 2007) timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Cheesecake, alleging a hostile and sexually offensive work environment. In June 2008 the EEOC filed a Title VII enforcement action. Cheesecake now attempts to block Fitzpatrick and Miller's right to intervene in the EEOC action by asserting that the untitled and paltry provision in the Handbook Receipt requiring "arbitration proceedings" for "differences" created a binding arbitration agreement.

**ARGUMENT**

**I.    THE ALLEGED ARBITRATION AGREEMENT.**

Cheesecake claims the following untitled paragraph, taken from the Handbook Receipt, created a binding arbitration agreement when initialed by Fitzpatrick and Miller in October, 2004:

> I recognize that differences may arise between me and the Company during, or following my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I or the Company determines that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director, the CARELINE and/or the Company's staff relations department), have not resulted in a mutually acceptable resolution of the dispute between me and the Company, <u>I agree to participate in arbitration proceedings</u>.

[Exhibits A and B to Motion to Compel Arbitration (emphasis added)]

This is the complete provision relied upon by Cheesecake. It incorporates nothing by reference (nor has Cheesecake supported their Motion to Compel Arbitration with any additional material). The provision does not specify what claims it purports to cover. Notably, it attempts to compel arbitration for Cheesecake's employees but not Cheesecake. Finally, it is surrounded by other provisions that expressly deny the existence of any employment agreement or contract and expressly assert Cheesecake's right to unilaterally change, delete or add policies/provisions to the employee handbook at any time. *Id.*

## II. THE "AGREEMENT" IS UNCONCSIONABLE AND UNENFORCEABLE.

Cheesecake makes much of the Federal Arbitration Act's ("FAA"), 9 U.S.C. § 2, general policy favoring arbitration and summarily asserts that the alleged arbitration agreement must be enforced under the FAA and common law contract principles. Fitzpatrick and Miller do not deny that the FAA authorizes courts to enforce agreements to arbitrate statutory claims, including Title VII claims, or that a common law duty to arbitrate such claims may arise pursuant to a valid contract. Unfortunately for Cheesecake, the inquiry does not end, or even begin, there, as "[t]he presumption in favor of arbitration disappears, however, 'when the parties dispute the existence of a valid arbitration agreement.'" *Stein v. Burt-Kuni One, LLC*, 2005 WL 2406110, *1 (D. Colo. 2005) (*citing Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

State law determines, as a threshold matter, whether the parties have agreed to arbitrate, and general contract defenses, including unconscionability, may invalidate an arbitration agreement. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *Circuit City v. Adams*, 279 F. 3d 889, 892 (9th Cir. 2002); *Ticknor v. Choice Hotels Int'l. Inc.*, 265 F.3d 931, 936-37 (9th Cir. 2001). "The enforceability of the agreement to arbitrate is determined by principles of general contract law." *Broemmer v. Abortion Services of Phoenix, Ltd.*, 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (1992). Pursuant to Arizona law, an agreement is unenforceable if procedurally and/or substantively unconscionable. A.R.S. § 12-1501; *Cooper v. QC*

*Financial Services, Inc.*, 503 F. Supp. 2d 1266, 1277-78 (D. Ariz. 2007) (citing *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51 (1995)); *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. and Mgmt, Inc.*, 795 P.2d 1308 (Ct. App. 1990). Here the alleged arbitration agreement is both.

**A.   The "Agreement" is Procedurally Unconscionable.**

Cheesecake did not play fair in attempting to force Fitzpatrick and Miller to waive critical rights. Procedural unconscionability concerns the circumstances surrounding the formation of an agreement, and focuses on inequality of bargaining power and unfair surprise (hidden terms). *Maxwell*, 907 P.2d at 57-58.

Here, the party with stronger bargaining power, Cheesecake, presented a standardized "take it or leave it" unilaterally-drafted form to the weaker parties, Fitzpatrick and Miller. *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778 (9th Cir. 2002) (arbitration clause in take-it-or-leave-it form contract drafted by employer procedurally unconscionable); *Adams*, 279 F.3d 889 at 893 (same). Moreover, the alleged arbitration provision was an untitled and insubstantial paragraph on the final page of a 66-page employee handbook. *Cf. Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1052 (Ct. App. 2006) (arbitration clause began with a bold "ARBITRATION" and at least referred to specific arbitration rules/acts that were available publicly, providing means to inquire as to meaning of arbitration and waiver of rights). Finally, further evincing that the bargaining did not proceed as it should, and as discussed more below, Cheesecake inserted advantageous one-sided language at this obscure location, attempting to preserve its own rights to court access while simultaneously denying Fitzpatrick and Miller's. *Cooper*, 503 F.Supp.2d at 1279; *Broemer*, 173 Ariz. at 151, 840 P.2d at 1016.

The provision on which Cheesecake relies does not even explain to Fitzpatrick or Miller what it means to "participate in arbitration proceedings," what the rules will be, where those arbitration proceedings are supposed to take place, or what rights they might be waiving by signing. Based on all of the foregoing, the claimed arbitration provision is procedurally unconscionable.

5

### B.     The "Agreement" is Substantively Unconscionable.

The agreement is also substantively unconscionable because it lacks mutuality. Substantive unconscionability focuses on the terms of the agreement, and whether they are unfairly one-sided. *Maxwell*, 907 P.2d at 57-58.

Cheesecake summarily concludes that the alleged arbitration agreement here is "not one-sided or unfair." [Motion to Compel Arbitration, p. 8] Cheesecake does not explain, nor can it, how this assertion survives in light of the plain language of the provision which unilaterally attempts to force Fitzpatrick and Miller to arbitrate claims against Cheesecake but imposes no such requirement on Cheesecake. The courts have repeatedly refused to enforce such oppressively one-sided terms, particularly in the context of arbitration agreements preserving court access for the drafting party.[1] Pursuant to Arizona law, the arbitration agreement is substantively unconscionable and unenforceable for lack of mutuality.

Because the alleged arbitration agreement is procedurally and substantively unconscionable pursuant to Arizona law, the Motion to Compel Arbitration should be denied.

### III.    FITZPATRICK AND MILLER'S CLAIMS ARE NOT COVERED BY THE ALLEGED ARBITRATION AGREEMENT AS THERE IS NO EXPRESS OR KNOWING AGREEMENT TO ARBITRATE THE CLAIMS AT BAR.

Even if the provision at issue created a valid and enforceable arbitration agreement, which it clearly did not, the FAA would compel arbitration only insomuch as the agreement

---

[1] *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1262 (9th Cir. 2005) (arbitration agreement unconscionable for lack of mutuality); *Ferguson*, 298 F.3d at 784-85 (same); *Adams*, 279 F.3d 889 at 893-94 (same); *Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d 1038, 1046 (9th Cir. 2001) (discussing *Armendariz v. Foundation Health Psychcare Servs.*, 6 P.3d 669 (Cal. 2000)); *Stevens/Leinweber/Sullens, Inc.,* 795 P.2d at 1313 (a unilateral arbitration option clearly does not promote the public policy favoring arbitration); *E-Z Cash Advance, Inc., v. Harris*, 60 S.W.3d 436, 441 (Ark. 2001) ("There is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system"); *Iwen v. U.S. West Direct*, 977 P.3d 989, 996 (arbitration unenforceable as non-mutual unless both parties required to arbitrate) (Mont. 1999). *Cf. Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F.Supp. 1060 (D. Ariz. 1997) (no mutuality problem where defendant had unilateral option of choosing between two alternative dispute resolution mechanisms but not litigation).

encompasses the claims at issue, which it does not. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960).

Cheesecake concludes that the agreement is all-encompassing, apparently because it purports to cover "differences," and that Fitzpatrick and Miller knowingly agreed to waive critical rights for redress of civil rights violations and crimes/intentional torts.  In support, Cheesecake offers a single fact:  "each entered his initials next to" an untitled paragraph on the final page of a 66-page employee handbook, which says nothing more than that they (Fitzpatrick and Miller, NOT Cheesecake) will "participate in arbitration proceedings" regarding "differences."[2]  [Motion to Compel Arbitration, pp. 4, 8]

Putting aside the remarkable use of euphemism that would be required to place claims arising from repeated physical and sexual assaults and harassment within the scope of a "difference," the Ninth Circuit, recognizing that the policy underlying Title VII is at least as important as that underlying the FAA, has held that an employee cannot waive Title VII claims and analogous state claims unless the employee expressly and knowingly agreed to the arbitration of those claims. *Renteria v. Prudential Ins. Co. of America*, 113 F.3d 1104, 1106-08 (9th Cir., 1997) (express waiver requirement for arbitration agreements derived from legislative history of Title VII); *Prudential Ins. Co. of America v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994) (no knowing agreement regarding arbitration of Title VII claims where employment contract did not describe *any* disputes the parties agreed to arbitrate); *see also Stein*, 2005 WL 2406110 at *3 (*some* language regarding claims subject to arbitration and procedures to be followed are essential, particularly regarding Title VII claims).

It is impossible to conclude that the meager clause Cheesecake now invokes created an express and knowing waiver of the Title VII and derivative claims at issue in this case, or *any* claims for that matter.  This is especially true in light of other language in the Handbook Receipt

---

[2] Fitzpatrick and Miller have been unable to find, and Cheesecake has not cited, a more insubstantial or even similar arbitration provision ever enforced by any court.

(1) negating the idea that it formed an agreement by stating that Fitzpatrick and Miller were *not* entering into any agreement or contract of employment because their employment at all times would be at-will [Exhibits A and B to Motion to Compel Arbitration], *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998) (at-will language denying existence of contract implied non-contractual unilateral policies of employer rather than employee's knowing entry into arbitration agreement), and (2) asserting that Cheesecake could, in its sole discretion, change, delete or add polices/provisions at any time [Exhibits A and B to Motion to Compel Arbitration], *Stein*, 2005 WL 2406110 at *3 (*citing Dumais*, 299 F.3d at 1220) (such language made arbitration provision illusory and unenforceable).

Fitzpatrick and Miller cannot be forced to arbitrate their claims because they did not expressly or knowingly waive their right to litigate their disputes, and in particular their Title VII claims, in a judicial forum. They did not knowingly waive their right to jury trial or the right to an appeal. The operative language in the otherwise-nondescript paragraph consists of seven words: "I agree to participate in arbitration proceedings." In the face of the surrounding clauses expressly disavowing employment agreement or contract and stating that Cheesecake could unilaterally alter its policies/provisions at any time, it is impossible to conclude that there was an agreement to arbitrate *any* kind of claims, let alone the Title VII claims at issue in this case.

## CONCLUSION

For the foregoing reasons, Cheesecake's Motion to Compel Arbitration should be denied and Fitzpatrick and Miller should be granted leave to intervene in this matter.

DATED this 12th day of February, 2008.

DESSAULES LAW GROUP

By /s/ Jonathan A. Dessaules (#19439)
    Jonathan A. Dessaules
    *Attorneys for Plaintiffs-in-Intervention*

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 12, 2008, I electronically transmitted the foregoing Response to Cross-Motion to Compel Arbitration and Stay Proceedings to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mary Jo O'Neill
Sally C. Shanley
Katherine Kruse
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
3300 North Central Avenue, Suite 690
Phoenix, Arizona 85012-2504
*Attorneys for Plaintiff Equal Employment Opportunity Commission*

Lawrence J. Rosenfeld
John Doran
Michael L. Walker
Greenberg Traurig, LLP
2375 East Camelback Road, Suite 700
Phoenix, Arizona 85016
*Attorneys for Defendant Cheesecake Factory*

/s/  Jonathan A. Dessaules