**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | ) No. CV 08-1207-PHX-NVW ) |
| Plaintiff, | ) **ORDER** ) |
| and | ) ) |
| Bryce Fitzpatrick and Albert Miller, | ) ) |
| Plaintiff-Intervenors, | ) ) |
| vs. | ) ) |
| The Cheesecake Factory, Inc., a Delaware corporation, | ) ) ) |
| Defendant. | ) ) ) |

Pending before the Court is Defendant Cheesecake Factory's Cross-Motion to Stay Proceedings and Compel Arbitration (doc. #15).

**I.     Background**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. The Equal Employment Opportunity Commission ("EEOC") filed the initial complaint in the action, and the charging parties, Bryce Fitzpatrick and Albert Miller, subsequently were granted leave to intervene. Fitzpatrick and Miller's Complaint-in-Intervention alleges five counts: (1) hostile work environment sexual harassment, (2) assault, (3) battery, (4) intentional infliction of emotional distress, and (5)

punitive damages. Cheesecake Factory seeks an order compelling arbitration of Fitzpatrick's and Miller's claims.

Fitzpatrick and Miller signed a two-page document entitled "Handbook Receipt & Confidentiality Agreement" on pages 61 and 62 of Cheesecake Factory's employee handbook (the "Handbook"). They also initialed each of nine paragraphs in the document. The first paragraph on page 61 states:

> I acknowledge receipt of a copy of The Cheesecake Factory staff member handbook and other training materials relevant to my job. I understand that this Handbook and other materials contain important information on some of The Cheesecake Factory's general personnel policies and on my privileges and obligations as an employee of this Company. I acknowledge that it is my responsibility to read and adhere to the guidelines in all material. I am aware that The Cheesecake Factory may, in its sole discretion, change, rescind or add to any policies, benefits or practices described in this handbook or other training material and that I must abide by the new policies and practices.

The third paragraph on page 61 states:

> I also understand that the Handbook and other training materials are not, nor should they be considered to be, an agreement or contract of employment, express or implied. I further acknowledge and understand that my employment with The Cheesecake Factory is and at all time remains at will. This means that I have the right to terminate employment at any time, for any reason, without cause. Likewise, The Cheesecake Factory may terminate my employment at any time, for any reason, with or without cause.

The third paragraph on page 62 ("Arbitration Agreement") states:

> I recognize that differences may arise between me and the Company during, or following my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I or the Company determines that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director, the CARELINE and/or the Company's staff relations department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings.

Cheesecake Factory contends that Fitzpatrick's and Miller's agreement to "participate in arbitration proceedings" regarding "differences" that may arise during their employment requires arbitration of their claims. Fitzpatrick, Miller, and the EEOC

1  contend that the arbitration provision is (1) procedurally and substantively
2  unconscionable and unenforceable and (2) does not encompass Fitzpatrick's and Miller's
3  claims because it does not establish knowing agreement to arbitrate Title VII claims or
4  specific types of claims.

**II.    Analysis**

   **A.    Legal Standard**

The parties do not dispute that the Federal Arbitration Act ("FAA") applies to the employment agreements between Cheesecake Factory and Fitzpatrick and Miller. Under the FAA, arbitration agreements are generally enforceable except when grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to construe arbitration agreements under general state law contract principles, but courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1049, ¶ 11 (Ariz. Ct. App. 2005). The FAA strongly favors arbitration:

> The FAA embodies a clear federal policy in favor of arbitration. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.
> The standard for demonstrating arbitrability is not high. The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Such agreements are to be rigorously enforced.

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (footnote, internal quotation marks, and citations omitted).

Under the FAA, the district court decides only "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court decides both issues affirmatively, then the FAA "requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

- 3 -

### B. An Agreement to Arbitrate Exists.

Under Arizona law, a court may refuse to enforce a contract or any clause of a contract if the court as a matter of law finds the contract or clause to have been unconscionable at the time it was made. A.R.S. § 47-2302(A). "A bargain is unconscionable if it is such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Phoenix Baptist Hosp. & Med. Ctr. v. Aiken*, 877 P.2d 1345, 1349 (Ariz. Ct. App. 1994) (internal quotation marks and citations omitted).

"Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e, the contract terms per se." *Id.* Procedural unconscionability may be evidenced by unfair surprise, fine print clauses, or mistakes or ignorance of important facts. *Maxwell v. Fidelity Financial Servs., Inc.*, 907 P.2d 51, 57-58 (Ariz. 1995). Procedural unconscionability resembles fraud and duress. *Id.* at 58. Substantive unconscionability may be found where the relative obligations assumed by the contract are unfair and may be indicated by "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.*

### 1. Procedural Unconscionability

Fitzpatrick and Miller contend that the Arbitration Agreement is procedurally unconscionable because Cheesecake Factory "presented a standardized 'take it or leave it' unilaterally drafted form to the weaker parties." They further contend the Arbitration Agreement is procedurally unconscionable because it does not explain 'what it means to 'participate in arbitration proceedings, provide what the rules will be, where those arbitration proceedings are supposed to take place, or what rights they might be waiving by signing." Fitzpatrick's and Miller's affidavits state only that, at the time they signed the Arbitration Agreement, they did not know or understand what "arbitration

- 4 -

proceedings" meant. Neither states he would have declined Cheesecake Factory's offer of employment if he had understood the Arbitration Agreement required employees to seek resolution of employment disputed in an arbitral rather than a judicial forum.

Mere inequality in bargaining power is not sufficient to invalidate an arbitration agreement. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Moreover, an agreement may be enforceable even if the terms offered are not negotiable. *Phoenix Baptist Hosp.*, 877 P.2d at 1349; *Broemmer v. Abortion Services of Phoenix, Ltd.*, 840 P.2d 1013, 1016 (Ariz. 1992). Even if the weaker party does not understand all of the terms included in an agreement, the agreement may be enforceable if it is consistent with reasonable expectations and not unduly oppressive. *See Broemmer*, 840 P.2d at 1016.

Fitzpatrick and Miller do not contend that the Arbitration Agreement exceeds reasonable expectations for agreements between employers and employees. They do not contend that resolving employment disputes through arbitration will unduly oppress them. They offer no evidence that Cheesecake Factory attempted to deceive them or pressured them to sign the agreement under exigent circumstances. Although the Arbitration Agreement was placed at the back of the Handbook, Fitzpatrick and Miller each initialed the Arbitration Agreement in addition to signing the bottom of the page that included the Arbitration Agreement. Their affidavits do not state that they did not read the Arbitration Agreement or were prevented from inquiring about its meaning. Moreover, where the Court is authorized by 9 U.S.C. § 5 to appoint the arbitrator, the Arbitration Agreement's failure to specify what arbitration rules will apply and where arbitration proceedings will be held does not evidence an attempt to conceal terms that will be unfair to Fitzpatrick and Miller.

Thus, the Arbitration Agreement is not procedurally unconscionable.

### 2. Substantive Unconscionability

Fitzpatrick and Miller do not contend that the relative obligations imposed by the Arbitration Agreement are unfair or that the contract terms are "so one-sided as to oppress

or unfairly surprise an innocent party." *See Maxwell*, 907 P.2d at 58. Although the Arbitration Agreement does not indicate how arbitration costs are to be allocated, Cheesecake Factory stated on the record that Fitzpatrick and Miller will not have to pay for an arbitrator. *See Harrington*, 119 P.3d at 1055, ¶¶ 43-44, 49 (party seeking to invalidate arbitration provision bears burden of proving arbitration will be prohibitively expensive).

Instead, Fitzpatrick and Miller contend that the Arbitration Agreement is substantively unconscionable because it lacks mutuality. The Arbitration Agreement was initialed and signed by Fitzpatrick and Miller, but not by Cheesecake Factory. It states, "I agree to participate in impartial dispute-resolution proceedings..." and "I agree to participate in arbitration proceedings...." It does not state that Cheesecake Factory agrees to participate in arbitration proceedings. However, Defendant's Reply in Support of Its Cross-Motion to Stay Proceedings and Compel Arbitration states, "[T]he arbitration agreement clearly requires both the employee and the employer to arbitrate the employee's claims" and "Cheesecake Factory would be required to arbitrate Fitzpatrick's and Miller's claims even if it preferred a bench or jury trial, and this holds true regardless of whether the employer or the employee chooses to initiate some sort of claim."

It is not necessary, however, to determine whether the Arbitration Agreement is mutually binding because it is part of an at-will employment contract. "At-will employment contracts are unilateral and typically start with an employer's offer of a wage in exchange for work performed; subsequent performance by the employee provides consideration to create the contract." *Demasse v. ITT Corp.*, 984 P.2d 1138, 1142-43 (Ariz. 1999). "A unilateral contract does not require mutuality of obligation; but there is sufficient consideration in the form of services rendered." *Wagner v. City of Globe*, 722 P.2d 250, 253 (Ariz. 1986); *accord Mattison v. Johnston*, 730 P.2d 286, 290 (Ariz. Ct. App. 1986); *Gates v. Arizona Brewing Co.*, 95 P.2d 49, 52 (Ariz. 1939) ("mutual promises are not essential where a sufficient consideration is otherwise present"). Thus,

1  Fitzpatrick's and Miller's continued employment at Cheesecake Factory was sufficient
2  consideration for their promise to arbitrate, and an enforceable contract was formed
3  regardless of whether the Arbitration Agreement imposed mutual obligations.[1]

4        Further, although Cheesecake Factory reserved the right to change "any policies,
5  benefits or practices described in this handbook or other training material," the
6  Arbitration Agreement is not illusory. The Tenth Circuit invalidated a New Mexico
7  contract's arbitration agreement as illusory because it allowed "one party the unfettered
8  right to alter the arbitration agreement's existence or its scope." *Dumais v. American*
9  *Golf Corp.*, 299 F.3d 1216, 1219-20 (10th Cir. 2002); *see also Mattison*, 730 P.2d at 288-
10  89 (jurisdictions rejecting "continued employment" as consideration for at-will
11  employment contract have concluded that the promise of continued employment is
12  illusory because the employer retains the right to discharge the employee at any time).
13  Under Arizona law, however, when an employer changes the terms of at-will
14  employment, it essentially makes a new offer of employment, and the employee may
15  accept the new offer by performance, thus forming a new unilateral contract—"a day's
16  work for a day's wages." *Demasse*, 984 P.2d at 1143. An "at-will employment
17  relationship . . . can be modified by the parties at any time just as other contracts can be
18  modified." *Wagner*, 722 P.2d at 253-54. Therefore, even if Cheesecake Factory's right to
19  change "any policies, benefits or practices described in this handbook or other training
20  material" for the future includes a right to change the Arbitration Agreement, exercising
21  the right would merely create a new offer of employment for the future and could not
22  affect the arbitration as to any prior period of completed work. Before Cheesecake

---

[1] Because the FAA applies state law only to the extent that it is not hostile to arbitration, *Doctor's Assocs.*, 517 U.S. at 686-87, the state law requirement of separate consideration for arbitration clauses in *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.*, 795 P.2d 1308, 1313 (Ariz. 1990), does not apply in this case.

- 7 -

1  Factory made any changes to the Arbitration Agreement, the existing contract would not
2  be illusory.
3        Thus, the Arbitration Agreement is not substantively unconscionable.
4        **C.**      **The Agreement to Arbitrate Encompasses the Dispute at Issue.**
5        Fitzpatrick and Miller contend that the Arbitration Agreement does not encompass
6  their claims because they did not expressly or knowingly waive their right to litigate their
7  disputes, especially their Title VII claims, by initialing a paragraph that requires
8  participation in arbitration proceedings to resolve "differences." They rely primarily on
9  *Prudential Ins. Co. of America v. Lai*, 42 F.3d 1299 (9th Cir. 1994) and *Renteria v.*
10 *Prudential Ins. Co. of America*, 113 F.3d 1104 (9th Cir. 1997). Neither decision precludes
11 enforcement of the Arbitration Agreement here.
12       A Title VII plaintiff may only be forced to forego his statutory remedies and
13 arbitrate his claims if he has knowingly agreed to submit such disputes to arbitration. *Lai*,
14 42 F.3d at 1305. In both *Lai* and *Renteria*, the plaintiffs signed a Uniform Application for
15 Securities Industry Registration or Transfer (Form U-4), which contained an arbitration
16 clause binding the applicant to arbitrate:

> any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations . . . .

19 *Id.* at 1302; *Renteria*, 113 F.3d at 1105. In both cases, "organizations" referred to
20 organizations in which applicants had registered, and both plaintiffs subsequently
21 registered with the National Association of Securities Dealers ("NASD"). The NASD
22 Code required arbitration of:

> [a]ny dispute, claim or controversy eligible for submission under part I of this Code between or among members and/or associated persons . . . arising in connection with the business of such member(s) or in connection with the activities of such associated person(s). . . .

Applicable to *Renteria* only, the NASD Code was amended to include claims "arising out of employment or termination of employment of such associated person(s) by and with

- 8 -

such member." 113 F.3d at 1105. In both cases, however, the plaintiffs were not registered with the NASD at the time they signed the Form U-4, did not have a copy of the NASD Manual or Code, and were given no notice in the documents they signed that they might be agreeing to arbitrate employment disputes. In both cases, the Ninth Circuit held the employees were not bound by any valid agreement to arbitrate their employment disputes "because they did not knowingly contract to forego their statutory remedies in favor of arbitration." 42 F.3d at 1305.

Some language in *Lai* and *Renteria* could be interpreted as requiring that arbitration clauses expressly reference specific statutory claims to be submitted to arbitration:

> Moreover, even if appellants had signed a contract containing the NASD arbitration clause, it would not put them on notice that they were bound to arbitrate Title VII claims. That provision did not even refer to employment disputes.

*Lai*, 42 F.3d at 1305.

> We held that a knowing waiver does not occur where neither the arbitration clauses nor any other written employment agreement expressly put the plaintiffs "on notice that they were bound to arbitrate Title VII claims." *Lai*, 42 F.3d at 1305. That holding is equally applicable here.
> . . . .
> Here, as in *Lai*, there was no express waiver of the statutory remedies in the written agreement executed by plaintiff.

*Renteria*, 113 F.3d at 1108. In light of the federal policy favoring arbitration, however, *Lai* and *Renteria* must be interpreted as requiring arbitration provisions to give notice they encompass employment disputes in order to be enforceable against Title VII plaintiffs, but not as requiring arbitration provisions to expressly state statutory references or to identify the types of employment claims encompassed. *See generally EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (en banc) (Civil Rights Act of 1991 encourages dispute resolution by arbitration and does not preclude enforcement of agreements requiring arbitration of Title VII claims as a condition of employment).

Here, the Arbitration Agreement refers to "differences that may arise between me and the Company during, or following my employment with the Company" and states the agreement "to participate in impartial dispute-resolution proceedings" is "a condition of and as consideration for the offer of employment by the Company." It plainly gives notice that the "differences," "claims," and/or "disputes" to be resolved through arbitration are those related to employment by Cheesecake Factory. Fitzpatrick's and Miller's claims, therefore, are encompassed within the scope of the Arbitration Agreement.

### III.  Conclusion

The Arbitration Agreement is neither procedurally nor substantively unconscionable. Its scope includes all claims arising out of Fitzpatrick's and Miller's employment with Cheesecake Factory. The FAA, therefore, mandates compelling arbitration of Fitzpatrick's and Miller's claims. 9 U.S.C. § 2. Further, because Fitzpatrick's and Miller's claims are referable to arbitration under the Arbitration Agreement, the FAA requires that the trial on their claims be stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Court will entertain a motion by Plaintiff-Intervenors Bryce Fitzpatrick and Albert Miller to participate as amici curiae in judicial proceedings on the EEOC's claims during the pendency of the stay.

IT IS THEREFORE ORDERED that Defendant Cheesecake Factory's Cross-Motion to Stay Proceedings and Compel Arbitration (doc. #15) is granted.

IT IS FURTHER ORDERED that judicial proceedings on Plaintiff-Intervenors' Complaint-in-Intervention (doc. #42) are stayed pending the outcome of arbitration, which shall be conducted in accordance with the Arbitration Agreement.

DATED this 5th day of May, 2009.

_____
Neil V. Wake
United States District Judge